UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DISTRICT

| | | |
|---|---|---|
| MORGAN K. STIRLING, | ) | Civil File No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **VERIFIED** |
| | ) | **COMPLAINT** |
| NORTH DAKOTA STATE UNIVERSITY, | ) | |
| | ) | Request for jury trial |
| Defendant. | ) | |

For her Complaint, Plaintiff Morgan K. Stirling ("Stirling") states against North Dakota State University the following:

> Since misconduct charges if sustained and recorded could seriously damage the students' reputation as well as interfere with later educational and employment opportunities, the State's claimed right to determine unilaterally and without process whether that misconduct has occurred immediately collides with the Due Process Clause's prohibition against arbitrary deprivation of liberty.

*Goss v. Lopez*, 419 U.S. 565, 574-75, 95 S.Ct. 729 (1975).

The opportunity to be heard is not a *pro forma* requirement and, instead, entails providing the accused student "the opportunity to be heard at a *meaningful time* and in a *meaningful manner*." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). The "timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved," namely the risk to the accused of the hearing resulting in an errant result and the unfair or mistaken suspension of the accused versus the need of the educational institution to instill order and discipline and to foster a safe environment conducive to learning. *See Goss v. Lopez*, 419 U.S. 565, 579-81 (1975) (discussing procedural due

1

process in context of high school setting). Ultimately, whether the procedures employed in a given case satisfy procedural due process requirements depends on three variables: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [university's] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews*, 424 U.S. at 335.

North Dakota State University ("NDSU") has not provided Ms. Stirling with timely or meaningful due process in response to false allegations of cheating within the university setting. First, Ms. Stirling has asserted, unequivocally, throughout that she did not cheat on any academic work or examination by using or possessing unauthorized materials. Second, NDSU did not provide Ms. Stirling with the process due to her for disciplinary proceedings as set forth in NDSU's Student Code of Conduct.  Instead, NDSU implemented a disciplinary proceeding intended for faculty and student teachers.  The NDSU unilaterally elected disciplinary procedure was procedurally inadequate to protect her property interest in her education and her liberty interest in her reputation.

## I.     PRELIMINARY STATEMENT

1.     This is an action for injunctive, declaratory, and monetary relief arising out of the irreparable and on-going damage to Morgan Stirling's property interest in her education and liberty interest in her reputation as a result of the disciplinary actions taken by the Defendant North Dakota State University ("NDSU").

## II.     JURISDICTION

2.     Plaintiff brings this action pursuant to 42 U.S.C §§ 1983 and 1988, the Fourteenth

Amendment to the United States Constitution, 28 U.S.C. §§ 1331 and 1343, and 28 U.S.C. § 1367. This Court has original jurisdiction over Counts One and Two, as well as supplemental jurisdiction over Count Three.

3.      Venue in this district is authorized by 28 U.S.C. § 1391 (b) because NDSU conducts business in this district and because this district is where a substantial part of the events or omissions giving rise to the claims occurred.

### III.   PARTIES

4.      Plaintiff Morgan K. Stirling is at all times materials herein, a citizen of the United States and a resident of the state of North Dakota.  She is in her senior and graduating year at NDSU completing her degree in Criminal Justice with a minor in Psychology.

5.      North Dakota State University is a public university organized and operated under the laws of the state of North Dakota.

### IV.   FACTS

6.      Morgan Stirling is an exemplary student with a 3.5 grade point average attending North Dakota State University for her senior year with a major in Criminal Justice and a minor in Psychology.  She is scheduled to graduate in May 2018.

7.      During her sophomore school year, she applied for a position with the Student Court and became an Associate Judge of the court in August 2016.  To serve on the Student Court, all students are required to participate for at least 3 hours per week.  Ms. Stirling along with her student colleagues participated on average 5 hours per week.  During her 1 year and nine months participation, Ms. Stirling rose to Senior Associate Judge on the Student Court.  As a member of the Student Court, she routinely meets with the student senate from NDSU's individual colleges.

8.      Ms. Stirling took and passed the Law School Admission Test ("LSAT") in June 2017 and begin looking at and applying to law schools in September 2017.  Ms. Stirling intended to apply to the University of Minnesota ("U of M"), University of Washington ("U of W") and University of California Los Angeles ("UCLA") schools of law. UCLA application deadline was February 1, 2018 and U of W's application deadline was March 15, 2018.  U of M's deadline is July 15, 2018. Ms. Stirling was unable to submit applications to U of W or UCLA law schools because North Dakota State University ("NDSU") took disciplinary action against her on October 31, 2017 that had not been resolved by the time the applications were due. Each law school application required Ms. Stirling to disclose any academic discipline on her record.  Between October 31, 2017 and a hearing scheduled for April 6, 2018, Ms. Stirling was required by NDSU to submit paper appeals within the NDSU's College of Science and Mathematics.

9.      On October 24, 2017 Ms. Stirling came to the Psychology 457 classroom 45 minutes early to study her materials in advance of the examination.  When she arrived, she put all of her materials on the seat next to her, used the restroom and began to study the online materials posted by the professor. She did not use the study aids in the academic calendar.  When the examination began, Ms. Stirling closed her computer and placed it in the backpack on the desk near her.  She balled up her coat and placed it on top of the back pack.  The academic calendar and study aids for multiple courses were not visible to Ms. Stirling when she took the examination.  And Ms. Stirling gave no thought to the study aids beneath her back pack because it would never occur to her to cheat or take unfair advantage in an academic examination.  Ms. Stirling has never been accused of any form of misconduct.  Her reputation and integrity of the greatest importance to her as she attempts to embark on a law school education and legal career.

4

10.     During the examination, a student's mobile phone rang.  Dr. Verlin Hinsz, Ph.D., the course professor, asked everyone to ensure that their mobile telephones were off and did not disrupt the examination.  Shortly thereafter another mobile telephone rang in the room.  Dr. Hinsz moved throughout the room asking students to ensure their mobile telephones were shut off.  Students were rummaging in their coats and backpacks to double check.  Dr. Hinsz stopped near Ms. Stirling's desk and so she made an obligatory check of her mobile telephone in her jacket pocket. After she checked her mobile, she placed her coat on the desk and resumed taking the examination. Ms. Stirling did not touch or move the back pack or the academic calendar containing the study aids.

11.     Shortly thereafter, Dr. Hinsz began to circle around Ms. Stirling approaching her and walking away multiple times.  He craned his neck at different angles and was taking long looks at her and the area.  Ms. Stirling was confounded by Dr. Hinsz behavior but continued taking the examination.  After making multiple approaches to Ms. Stirling's seat and peering around her seat, Dr. Hinsz came up to Ms. Stirling's seat from her right, pulled the backpack toward him, and grabbed the academic calendar out from under the backpack.  He looked at the calendar and placed it under Ms. Stirling's jacket on the desk.  Dr. Hinsz walked around the room again and returned to Ms. Stirling's desk, lifted her jacket and began looking at the materials in the calendar.  Dr. Hinsz then took the calendar to the podium at the front of the room and began taking pictures of the materials in the calendar and Ms. Stirling.  Dr. Hinzs returned to Ms. Stirling's seating, lifted her jacket and placed the academic calendar under her jacket on the desk.  Once again Dr. Hinsz began taking photographs of Ms. Stirling at her right and at a diagonal to her right.  Dr. Hinsz then returned to the podium at the front of the class.  All of the students taking the examination were aware of Dr. Hinsz' movements and actions.  At least five photographs were taken by Dr. Hinsz.

12.     Despite these highly unusual circumstances, Ms. Stirling completed her examination, turned it in, and attempted to speak with Dr. Hinsz regarding what had happened.  Dr. Hinsz declined to speak with her until all of the students completed their examinations and left the room. Ms. Stirling waited until all of the students exited the class to speak with Dr. Hinsz.  Ms. Stirling and Dr. Hinsz discussed the situation as Ms. Stirling attempted to respond to Dr. Hinsz's concerns. Ms Stirling repeatedly asserted that she had not used or seen the study aids during the examination to which Dr. Hinsz took possession.

13.     On October 31, 2017, Dr. Hinsz submitted correspondence to Ms. Stirling and Mark Nawrot, Chair of the Psychology Department within the College of Science and Mathematics at NDSU.  Dr. Hinsz alleged that Ms. Stirling engaged in "use of unauthorized information during Exam 3."  Dr. Hinsz identified NDSU Policy 335, found in Section 3 under *Non Broadbanded Staff Employees* ("NBSE"), as the policy under which Ms. Stirling was being punished and meted out the following discipline against Ms. Stirling: 1) a failing grade for the examination; 2) a permanent disciplinary mark on her academic record; 3) removal from her leadership position as Senior Associate Justice of the Supreme Court; and 4) expulsion from NDSU if a pattern of misconduct existed.  *Exhibit. 1*. Dr. Hinsz also deprived Ms. Stirling of the extra credit work she had done during the semester.  She was not permitted to participate in further extra credit as well.

14.     Ms. Stirling denied any wrongdoing and requested the opportunity to appeal Dr. Hinsz's disciplinary decision.  Dr. Hinsz directed Ms. Stirling to pursue the appeal process found in Policy 335 for Non Broadbanded Staff Employees.  *NDSU Policy 335: Code of Academic Responsibility and Conduct*. *Ex. 2*.   Ms. Stirling submitted her written appeal November 9, 2017. *Ex. 3*.  Not surprisingly, Dr. Hinze affirmed his own disciplinary decision in correspondence dated November 28, 2017.  *Ex. 4*.  Ms. Stirling received the denial on November 30, 2017.

15.     Initially, Dr. Hinsz described the incident as cheating or the "use of unauthorized materials".  When he denied Ms. Stirling's appeal, the incident was characterized as "possession of unauthorized materials". See *Ex. 1 and 4*.

16.     Under Policy 335 and as directed initially by Dr. Hinsz, Ms. Stirling was required to submit her appeal in writing was to Dr. Hinsz's colleague and Chair of the Psychology Department, Dr. Mark Narwot, Ph.D., and Dean of the College of Science and Mathematics, Dr. Scott Wood, Ph.D. Ms. Stirling submitted her written appeal on December 21, 2017.  *Ex. 5*.  On January 11, 2018, Dr. Narwot denied Ms. Stirling's appeal and affirmed Dr. Hinsz's disciplinary decision.  *Ex. 6*.  Ms. Stirling was provided, for the first time, with a document entitled *Forms of Cheating – Categories, Behaviors, and Suggested Penalties* ("Forms of Cheating"). *Ex. 7*.  Dr. Narwot did not identify the source for the Forms of Cheating document provided to Ms. Stirling.

17.     Dr. Hinsz submitted, in support of his claim that Ms. Stirling cheated, submitted only one of at least five photographs that he took during the incident.  Ms. Stirling has asked for copies of the additional photographs as she believes the photographs will be exculpatory.  According to Dr. Hinsz, Ms. Stirling intentionally blocked all views of the materials under her back pack.  Photographs from different angles will exculpate Ms. Stirling.  Ms. Stirling has been denied copies of the remaining photographs taken by Dr. Hinsz that will exculpate her.

18.     On February 5, 2017 Ms. Stirling submitted another written appeal to Dr. Wood.  *Ex. 8*.  Dr. Wood denied Ms. Stirling's appeal and affirmed Dr. Hinsz's disciplinary decision on February 15, 2018.  *Ex. 9*.  Dr. Wood informed Ms. Stirling that she could "request a hearing by the Student Progress Committee in the College of Mathematics and Sciences." *Id*.  March 7, 2018, Ms. Stirling appealed Dr. Wood's affirmance to Dr. Sangita Sinha, Ph.D.  Dr. Sinha and Ms. Stirling corresponded with Ms. Stirling asking about her rights in the hearing, Ms. Stirling's request for

documents and an understanding of the process that was due to her.  Dr. Sinha also asked Ms. Stirling for a copy of her Student Academic Misconduct Tracking form.  According to Dr. Sinha, the Student Academic Misconduct Tracking form was to have been provided to Ms. Stirling but it was not.  Ms. Stirling asked Dr. Sinha to provide information about the proceeding because the proceeding was not set forth in the Student Code of Conduct.  She also asked Dr. Sinha about the burden of proof and informed her that the student participants on the Student Progress Committee ("SPC") hearing the appeal were her colleagues in the Student Court.  *Ex. 10*.

19.     Dr. Sinha did not address Ms. Stirling's concern that the student representatives on the SPC were her colleagues in Student government. *Ex. 11*.  Dr. Sinha identified the burden of proof as "there needs to be proof that misconduct was not possible."  *Id*. at 8.  Dr. Sinha also wrote that she was unable to help Ms. Stirling access any NDSU documents that were important to Ms. Stirling's appeal.  *Id*. at 7-8. Subsequently, on March 16, 2018, Dr. Sinha established a deadline for the submission of any additional materials by no later than March 21, 2018.  *Id*. at 6. When Ms. Stirling asked about the witnesses and legal counsel or advisor, Dr. Sinha responded that she could bring witnesses but needed to have the list of witnesses to her one week before the hearing but was unable to answer whether Ms. Stirling was entitled to counsel during the hearing. *Id*. at 4-5. On March 20, 2018, Ms. Stirling asked that the hearing be delayed in order for her to understand the process and speak with individuals. *Id*.  Dr. Sinha responded on March 22, 2018 that the hearing was *tentatively* scheduled for April 6, 2018 and that Ms. Stirling was not entitled to counsel because "this is internal NDSU proceedings, not a legal proceeding."  *Id*. at 3.  On March 22, 2018, Ms. Stirling continued to ask questions related to the applicable policy.  *Id*. at 1-2.  No one from NDSU had spoken to her about her rights to due process or NDSU's obligations to her.

8

20.     On March 26, 2018, Ms. Stirling met with legal counsel for the first time.  On March 29, 2018, she submitted through counsel challenges to NDSU's process, requested specific documentation, and asked that the SPC hearing be held in abeyance.  Hearing nothing from NDSU in response to the March 29, 2018 correspondence, Ms. Stirling's counsel reached out to NDSU on April 3, 2018 to confirm NDSU received the correspondence.  *Aff. of Kane*.  On April 4, 2018, counsel for Ms. Stirling spoke with NDSU's counsel, Matt Hammer. *Id*. The purpose of the discussion was to gain a continuance in the hearing and obtain all of the evidence including copies of the additional photographs that Dr. Hinzs took during the alleged misconduct and the Student Academic Misconduct Tracking form that provided the allegations against her.  *Id.*  All of the requests were denied. *Id*.  Because NDSU's proposed hearing denied Ms. Stirling basic due process including, but not limited to, access to all of the evidence related to the incident, the identity of any witnesses that would be presented against her, her the right to counsel/advisor, student representatives on the panel, and a reasonable continuance, Ms. Stirling's counsel advised NDSU that Ms. Stirling could not participate.

21.     Ms. Stirling had never been provided with a copy of the witnesses that would be presented against her at the hearing.  She has been unable to identify classmates that would support the actions of Dr. Hinsz in the classroom that day.

22.     At no time did anyone from NDSU discuss with Ms. Stirling her rights or NDSU's obligations regarding timely and meaningful due process.

23.     By applying Section 335, rather than Section 601, NDSU deprived Ms. Stirling of the timely and meaningful due process to which she was entitled for allegations of misconduct.

NDSU POLICIES AND PROCEDURES

24.    NDSU has published and made available a document entitled Policy Manual.  The Policy Manual is electronically available.[1]  The following policy titles are identified:

1.  General Employment.
2.  Broadbanded Staff Employment.
3.  Non Broadbanded Staff Employment.
4.  Purchasing.
5.  Accounting.
6.  Student Affairs.
7.  General Administration.
8.  Grant and Contract Accounting.

*Exhibit No. 11.*

25.    Section 6 of the Manual entitled *Student Affairs* contains 12 policies related to students, including Policy 601entitled *Code of Student Conduct*.  *Ex. 12*.  There is no reference to Section 3 or Policy 335 in Section 6 of NDSU's Code of Student Conduct.  The Student Code of Conduct does not identify "academic" misconduct as distinct from misconduct in general.

26.    Under Policy 601, a student accused of misconduct is entitled to due process as represented by NDSU's flowchart.  *Ex. 13* at 23.  Under Policy 601, a student accused of misconduct is entitled to the following due process:

1)  Identification of Code violation;
2)  Notice of discipline;
3)  Investigation of allegations;
4)  Notice of Charge from Vice Provost;
5)  Referral to Student Affairs Office;

*Ex. 13* at 22, 5. Procedures.

27.    The Notice of Charge must include:

1.  Nature of alleged Code violation;
2.  Date, time and location of Code violation;
3.  Source of information;

---

[1].  See, https://www.ndsu.edu/policy/.  The Policy Manual itself asserts that it is "under constant revision."  *Id.*

4. Maximum sanctions if violation found; and
5. Right to representation by attorney or non-attorney "if suspension or expulsion is identified as potential sanctions."

*Ex. 13* at 26, *5.6 Notice of Charges*.

28.    Once the Notice of Charge is provided, a student is entitled to a pre-hearing conference with a hearing officer.  The hearing officer, in the pre-hearing conference, is required to provide a student with the following:

1. Student's rights and responsibilities;
2. Nature of complaint and Code violation; and
3. Process for resolution of Code violation.

*Ex. 13* at 26.

29.    NDSU identified in Policy 601 that it may pursue different procedures for misconduct that is eligible for suspension or expulsion.  For "non-suspension/expulsion eligible conduct" the administrative hearing is to consist of the student and NDSU's appointed hearing officer.  In "suspension/expulsion eligible conduct" the hearing must include the student, hearing officer, institutional representative, and any other individual(s) appropriate to the process.  *Id*. at 27.

30.    The hearing rights include the establishment of a deadline for the submission of evidence and witnesses during the pre-hearing conference.  The hearing under Policy 601 is recorded and retained for the purpose of appeal.  *Ex. 13 at 28*.  During the hearing, the student has a right to an advisor.  The advisor may be an attorney.  If the hearing includes the potential for suspension or expulsion, the attorney may fully participate. If the sanction does not include the potential for suspension or expulsion, the attorney may advise but not fully participate.  *Id*.

31.    In a Student Code of Conduct hearing, the burden of proof is on NDSU.  *Id*. at 29.  That burden is a "preponderance of the evidence." *Id*.

11

32.     The Code of Conduct also provides hearing procedures for "potential suspension or expulsion cases." *Ex. 13* at 30.  The hearing procedures specify the conduct of the hearing, the complaint and response, the presentation of witnesses, the questioning of parties, and closing statements.  A hearing decision is to be provided within 10 days of the hearing.  *Id.* Policy 601 is constitutionally deficient because it does not set forth timelines for the completion of the 601 disciplinary hearing and does not identify academic dishonesty as student misconcut.

33.     According to Policy 601, the sanctions from a hearing may include a loss of university privileges such as "holding office in any [Congress of Student Organizations] recognized student organizations."  *Ex. 13* at 35-36.

34.     In this case NDSU staff unilaterally implemented Policy 335 found in the Policy Manual Section 3.  Section 3 is entitled *Non-Broadbanded Staff Employment* (Faculty or Other).  Section 335, part of Section 3, is part of the *Teaching* policies and sets forth a code of conduct for student and professional teachers at NDSU.  *Ex. 14*.

35.     NDSU does not provide its student with notice of accountability under Section 3.  See *Ex. 13*.

36.     NDSU has asserted through its counsel that because Section 3 contains policies entitled *Academic Misconduct* (326) and *Code of Academic Responsibility* (335) for its non broadbanded staff employees, the policies are applicable to students, whether non broadbanded staff employees or not.  *Affidavit of Margaret O'Sullivan Kane*.  NDSU counsel further confirmed that Section 3 had been and continued to be applied to all of its students facing charges of misconduct that is academic in nature.  *Aff. of Kane*.  On information and belief, NDSU has a pattern and practice of applying constitutionally inadequate due process for student accused of misconduct involving

academic dishonesty.  On information and belief, NDSU has not provided training or supervision of its employees in the conduct of its due process obligations to university students.

37.     NDSU has made, contrary to its due process responsibilities under the law, a distinction between misconduct and misconduct involving academic.  Students at NDSU who are alleged to engage in misconduct are entitled to the due process set forth in Section 6.  Students at NDSU who are alleged to have engaged in misconduct of an academic nature are required to proceed through a process set forth in Policy 335.  The process identified in Policy 335 contains inadequate due process protections for students, including Ms. Stirling, who are protecting their property and liberty interest.  Policy 335 denies students the timely and meaningful due process set forth in Section 6 and consistent with the law.  In this case, NDSU required Ms. Stirling to proceed through a five month written appeal process without ever being given, *inter alia,* timely or meaningful opportunity to be heard in a face-to-face meeting, to be informed of her rights and the process, to timely and meaningful appeals, to be notified of the correct burden of proof, to  present witnesses, to examine all the evidence, to receive notice of the witnesses against her, and to receive assistance through advice of counsel or an advisor.

38.     The infringement of her education and reputational interests are as significant, if not more so, than the punishments meted out for misconduct under Policy 601.  Yet, NDSU elected to implement a process that provided her none of the procedural protections available to other students whose property interests in their education may be infringed through discipline.  NDSU has offered no explanation, reasonable or otherwise, to justify the significant due process distinctions given to students accused of misconduct versus academic misconduct.

39.     Under the Student Code of Conduct, discipline for misconduct may result in written warning, conduct probation, supervised conduct probation, conduct suspension or conduct

expulsion, including the privilege of participating in student organizations such as Student Court. *Ex. 13* at 32-33. The discipline warranting Policy 601 due process would impair a student's record and education is far less than the discipline Ms. Stirling is facing.

40.     Ms. Stirling has suffered an irreparable injury not only to her education but also to her reputation within NDSU. The impact of the injury has been to damage Ms. Stirling's years of progress toward law school. Thus far, she has lost the opportunity to apply to two of her three choices for law schools because of the pending disciplinary proceedings. She lost the grade she deserved in the course, and the fruits of her extra credit in the course. Her removal from Student Court would result in significant reputational damage.

41.     By applying Section 3, NDSU deprived Ms. Stirling not only of adequate notice of the related procedures and rights but also has infringed Ms. Stirling's property interest in her education by providing an untimely and inapplicable due process.

42.     On information and belief, NDSU has failed to properly train, implement, and supervise their staff regarding the Student Code of Conduct and the due process rights of students facing charges of misconduct involving academic misconduct. At present, NDSU staff have a pattern and practice of requiring students who are alleged to engaged in misconduct of the academic variety to proceed through a process intended for NDSU non broadbanded employees. By not properly training, implementing and supervising its staff, NDSU staff has made an artificial, arbitrary and constitutionally unlawful distinction between the due process to be provided to student misconduct and student misconduct related to any academics. Whether academic or otherwise, NDSU students are entitled to the application of the Student Code of Conduct rather than a code of conduct applicable to non broadbanded employees.

43.     Public university students alleged to have engaged in misconduct for which discipline will be provided are entitled to the due process procedure identified in Section 6.  Students who are not performing consistent with the academic standards are entitled to a process that has far less due process and far greater deference to the academic professionals.  Because NDSU has not provided the necessary training, implementation and supervision, its staff are using Policy 335 with students whose conduct is related to academics.

44.     NDSU has declined to provide Ms. Stirling even the infirm due process under Policy 335 by denying her access to data related to the disciplinary incident and action.  Specifically, she requested copies of all the photographs taken by Dr. Hinsz in the classroom, which Ms. Stirling believes will exculpate her, and a copy of Student Academic Misconduct Tracking form that is to set forth the misconduct allegations identified by NDSU staff.  NDSU and its counsel ignored this request and others.

45.     NDSU did not identify misconduct involving cheating, plagarizing, etc in its Student Code of Conduct.  Because NDSU has not identified this type of misconduct as entitled to the same due process protections as any other disciplinary processing against a student, NDSU staff have relied upon a section of its policies and procedures related to teacher misconduct simply because Academic Misconduct is clearly identified within Policy 335.

46.     Until Ms. Stirling retained legal counsel, she was unaware that the Student Code of Conduct rather than Policy 335 was applicable to the allegations of misconduct.

## V.     CLAIMS

### COUNT ONE

### EDUCATION AND FOURTEENTH AMENDMENT DUE PROCESS
### 42 U.S.C. § 1983

47.     Plaintiff realleges all preceding paragraphs as though fully set forth herein.

48.     Morgan K. Stirling has a constitutionally protected property interest in her education and liberty interest in her reputation.

49.     NDSU and its employees, at all times material herein, were acting within their capacity as state actors and under color of state law.

50.     The actions of NDSU described in this Complaint deprived Ms. Stirling of her property interests in her education without timely, meaningful or adequate due process.  Ms. Stirling was denied access to evidence, notice of witnesses, a timely opportunity to be heard to protect her

51.     The actions of NDSU described in this Complaint deprived Ms. Stirling of her liberty interest in her reputation without timely, meaningful or adequate due process.

52.     NDSU did not provide adequate due process consistent with its Student Code of Conduct for allegations of academic misconduct.  NDSU denied Ms. Stirling timely and meaningful due process consistent with her protected property and liberty interests.  In so denying Ms. Stirling's right to minimum due process procedures set forth in the Student Code of Conduct, NDSU violated and infringed Ms. Stirling's constitutionally protected interests.

53.     At all times relevant herein, NDSU acted under the color of state law and with intent or reckless disregard for Ms. Stirling's protected interests.  NDSU's actions infringed and deprived Ms. Stirling of her property interest in her education without minimal due process protections set forth for student misconduct. NDSU's staff applied policy 335 in an untimely, unfair, overly punitive, restrictive and unavailing process.

54.     The actions and inactions of NDSU as described in this Complaint infringed and deprived Ms. Stirling of her liberty interest in her reputation without timely, meaningful or adequate due process.  The false and contested allegations of cheating have already adversely affected Ms. Stirling's ability to complete law school applications.  The punishment associated with the

discipline will affect not only her ability to pursue higher education but also her reputation in the NDSU community where she holds the position of Senior Associate Judge on the Student Court.

55.     NDSU had knowledge that the allegations were false, that the process provided was infirm and that Ms. Stirling had requested a continuance of the hearing until she was able to consult with and be represented by legal counsel.  NDSU nevertheless proceeded forward with the infirm process without Ms. Stirling's participation.

56.     NDSU is the sole entity responsible for the implementation of the its policies and procedure, has a duty to design and implement, train and supervise its staff with regard to policies and procedures that protect Ms. Stirling's property and liberty interests through timely, meaningful and adequate due process.

57.     NDSU's actions constitute violate of Ms. Stirling's property, liberty and due process rights under the Fourteenth Amendment to the United States Constitution. As a result of these violations, Ms. Stirling is entitled to relief pursuant to 42 U.S.C. § 1983.

58.     NDSU acted with recklessness or indifference to Ms. Stirling's due process rights associated with her property and liberty interests. NDSU has a pattern and practice of acting with recklessness or indifference to its students' due process rights related to their education and liberty interests.

59.     As a direct and proximate cause of the action or inactions of NDSU, Morgan Stirling suffered significant social, emotional, reputational and educational harm and has been damaged in an amount to be determined at trial.

60.     Ms. Stirling is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

61.     Ms. Stirling requests and demands that the Court issue a preliminary order issue compelling NDSU to provide Ms. Stirling with due process set forth in the Student Code of Conduct, Section 601.

## COUNT TWO

### LIBERTY INTEREST IN REPUTATION AND FOURTEENTH AMENDED DUE PROCESS
### 42 U.S.C. § 1983

62.     Plaintiff realleges all preceding paragraphs as though fully set forth herein.

63.     Morgan Stirling has a liberty interest in her reputation at NDSU.  She has protected interests that require timely, meaningful and adequate prior to infringing her reputation with allegations of misconduct within the university setting.

64.     NDSU and its employees, at all times material herein, were acting within their capacity as state actors.

65.     The actions of NDSU described in this Complaint deprived Ms. Stirling of her liberty interest in her reputation without timely, meaningful or adequate due process.  Ms. Stirling was denied access to evidence, notice of witnesses, a timely opportunity to be heard to protect her

66.     The actions of NDSU described in this Complaint deprived Ms. Stirling of her liberty interest in her reputation without timely, meaningful or adequate due process.

67.     NDSU is the sole entity responsible for the implementation of the its policies and procedure, has a duty to design and implement policies and procedures that protect Ms. Stirling's property and liberty interests through timely, meaningful and adequate due process.

68.     NDSU's actions constitute violate of Ms. Stirling's property, liberty and due process rights under the Fourteenth Amendment to the United States Constitution. As a result of these violations, Ms. Stirling is entitled to relief pursuant to 42 U.S.C. § 1983.

69.     NDSU acted with recklessness or indifference to Ms. Stirling's due process rights associated with her property and liberty interests. NDSU has a pattern and practice of acting with recklessness or indifference to its students' due process rights related to their education and liberty interests.

70.     As a direct and proximate cause of the action or inactions of NDSU, Morgan Stirling suffered significant social, emotional, reputational and educational harm and has been damaged in an amount to be determined at trial.

71.     Ms. Stirling is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

**COUNT THREE**

**NEGLIGENCE**

72.     Plaintiff realleges all preceding paragraphs as though fully set forth herein.

73.     NDSU owed Ms. Stirling a duty of care consistent, at a minimum, with its own policies and procedures related to student conduct.

74.     Negligence occurred as a result of and was proximately caused by the careless, negligent, grossly careless and reckless conduct of the NDSU which consisted of, *inter alia*, the following:

  a.  Failure to properly train, implement and supervise employees in the conduct of due process hearing for student misconduct;

  b.  Failure to provide Morgan Stirling with due process protections set forth in its policies and procedures;

  c.  Failure to exercise the ordinary care in responding to allegations of misconduct;

  d.  NDSU failed to otherwise comply with the applicable laws and regulations of the State of North Dakota and the applicable federal laws and regulations;

e.  NDSU failed to exercise the degree of care that has been adopted by public universities and required under the circumstances; and

f.  Has been otherwise negligent.

75.  As a result of the conduct described herein, NDSU breached its duties of care owed to Morgan Stirling for which she sustained injuries, losses, and damage which are more fully described above and for which Ms. Stirling did not contribute any degree of negligence.

## VI.  RELIEF

Therefore, Plaintiff respectfully request that this Court:

1.  Exercise jurisdiction over this action;
2.  Declare that Ms. Stirling has a constitutionally protected property interest in their education;
3.  Declare that Ms. Stirling has a constitutionally protected liberty interest in her reputations within a public university;
4.  Declare that NDSU actions infringed and deprived Ms. Stirling of her constitutionally protected interests, as well as all university students disciplined through policy 335;
5.  Declare that NDSU's procedures under Rule 335 is constitutionally inadequate to protect Ms. Stirling's property and liberty interests;
6.  Provide preliminary injunctive relief, preventing NDSU from denying Ms. Stirling the due process set forth in the Student Code of Conduct;
7.  Provide permanent injunctive relief by preventing NDSU from denying all public university students due process consistent with Section 6 and the Student Code of Conduct;
8.  Order training and supervision of NDSU staff in the implementation of its disciplinary policies and procedures;
9.  Order NDSU to amend its policies and procedures to comply with the due process standards required for public universities;
10. Award compensatory damages against NDSU in excess of $75,000.00, including costs and attorney's fees as appropriate, for all counts alleged above; and
11. Provide such other and further relief as the Court deems just and equitable.

Respectfully submitted,

KANE EDUCATION LAW, LLC.

Dated: April 23, 2018          /s/ Margaret O'Sullivan Kane

                                     Margaret O'Sullivan Kane /ID # 220243

                                     420 Summit Avenue

                                     Suite 306

                                     Saint Paul, Minnesota 55102

                                     Tel. 651.222.8611

                                     Fax. 651.221.2623

                                     mkane@kaneeducationlaw.com

                                   Attorney for Plaintiff

### CONFIDENTIAL VERIFICATION

I verify that I have read the foregoing Complaint, and that all of the facts and statements made therein are true and correct to the best of my knowledge, as to the attached documents they are true and correct copies, and as to those facts stated on information and belief, I also believe them to be true and correct.

Dated: April 23, 2018           /s/ Morgan K. Stirling

                                     Morgan K. Stirling

Subscribed and sworn to before me
this _____ day of April 2018.

_____
Notary Public